THE VILLAGE OF HILLSIDE, Plaintiff-Appellee, *v.* CHICAGO, AURORA AND ELGIN RAILROAD CORPORATION, Defendant and Third-Party Plaintiff-Appellee.—(THE VILLAGE OF BELLWOOD, Third-Party Defendant-Appellant.)

First District (4th Division)   No. 61535

Opinion filed May 12, 1976.—Rehearing denied September 7, 1976.

Staehlin, Jantorni, Sullivan and Gentill, of Chicago (John M. Sullivan and Susan L. Jantorni, of counsel), for appellant Village of Bellwood.

Burke & Burke, Ltd., of Chicago (John M. Burke, of counsel), for appellee Village of Hillside.

Holland & Holland, of Chicago, for appellee Chicago, Aurora and Elgin Railroad Corporation.

Mr. JUSTICE BURMAN delivered the opinion of the court:

The Village of Hillside, an Illinois Municipal Corporation, (Hillside) instituted this cause on September 5, 1973, seeking injunctive relief against the Chicago, Aurora & Elgin Railroad Corporation (CA&E) for allegedly causing and maintaining a nuisance at its right-of-way crossing with 51st Avenue. The CA&E answered, denying liability, and further filed a third-party complaint against the Village of Bellwood (Bellwood). Pursuant to the third-party complaint, Bellwood filed its answer and affirmative defense alleging that the area in question was a public highway by prescription. On October 24, 1974, the circuit court granted summary judgment in favor of plaintiff Hillside and against third-party defendant Bellwood, expressly finding that no public highway or easement by prescription existed over the 51st Avenue crossing of the CA&E right-of-way. Bellwood appeals from that judgment and from that part of an order which conditioned the stay of execution upon the payment $300 by Bellwood to Hillside.

The Villages of Hillside and Bellwood are neighboring communities in western Cook County which share a common boundary between the CA&E right-of-way to the south and the Chicago Great Western right-of-way to the north. The CA&E right-of-way lies entirely within the village limits of Hillside and is approximately 100 feet wide. The record reveals that a certain street called 51st Avenue runs north and south between the two villages. 51st Avenue is located between Mannheim and Wolf Roads, and is the only street which crosses the rights-of-way for this 1½-mile distance. The instant controversy focuses on the 51st Avenue crossing of the CA&E right-of-way.

It appears that the 51st Avenue crossing is rather crude, and consequently, the flow of vehicular traffic across it causes clouds of dust to

rise. The Village of Hillside effectively abated the problem on March 12, 1973, when it erected a steel barricade across the street along the southerly edge of the CA&E right-of-way. The barricade prevented the flow of any traffic on 51st Avenue. Shortly thereafter, the Village of Bellwood filed a complaint for injunction alleging easement rights over the crossing. Bellwood's complaint subsequently was voluntarily dismissed when the two villages reached a settlement and the barricade was removed.

On September 5, 1973, the Village of Hillside instituted this action against the CA&E. In its complaint Hillside alleged *inter alia* as follows: That the CA&E owned, operated and controlled the right-of-way in controversy; that said right-of-way contained stone, dirt, cinders, debris and gravel which had been placed there by the CA&E; that for a long time said right-of-way was traversed by automobile and other vehicular traffic which caused great clouds of dust, debris and similar material to be dispersed into the air and the surrounding neighborhood; that said activities violated section 26 of chapter 100½ of the Illinois Revised Statutes; and that as a result thereof, the Village of Hillside was deprived of peaceful enjoyment and its citizens and residents were damaged both in loss of property value and in health and safety. Hillside requested a temporary and permanent injunction against the CA&E from further use of the property as it was presently used.

In its answer the CA&E admitted ownership and control of the right-of-way, but alleged that it lacked information as to the truth of the other allegations. The CA&E also denied violation of the statute and that the Village of Hillside or its residents were damaged in any manner.

The CA&E also filed a third-party complaint against the Village of Bellwood. Therein it alleged that Bellwood previously had brought an action to enjoin Hillside from obstructing 51st Avenue where the same crossed its right-of-way, and in that action Bellwood asserted certain easement rights over and across its premises at 51st Avenue. The CA&E further alleged that the matters complained of by Hillside were the proximate result of the use by Bellwood of the alleged easement rights. The railroad prayed that Hillside's complaint be dismissed and that an injunction be entered, if at all, against Bellwood.

In its answer to the third-party complaint, Bellwood admitted that it previously had brought an action against Hillside in which it asserted certain easement rights over and across the CA&E right-of-way. Bellwood denied, however, that the alleged nuisance was the proximate result of its use of the easement. Subsequently, Bellwood amended its complaint to include an affirmative defense in which it alleged that the 51st Avenue crossing over the CA&E right-of-way was a public highway by virtue of chapter 121, section 2—202 of the Illinois Revised Statutes

(Ill. Rev. Stat. 1973, ch. 121, par. 2—202) in that the crossing had been used by the public for vehicular travel in excess of 15 years, and that said use by the public had been open, notorious, continuous, uninterrupted, adverse, and under claim of right with the knowledge, but not with the consent of the CA&E. Bellwood further alleged that since the area in question was a public highway located entirely within the village limits of Hillside, it constituted a part of the municipal street system of Hillside, and therefore, the responsibility for the maintenance and repair of said area was upon Hillside and not upon Bellwood.

Hillside filed a reply to the affirmative defense and denied that the crossing was a highway as provided by statute. It admitted that the public used 51st Avenue, but denied that said use had been open and notorious and specifically denied that said use was adverse and without the consent of the CA&E. Hillside further denied responsibility for the maintenance and repair of the crossing since the area had not been dedicated to it and since the crossing was not a highway.

With the matter having thus been put at issue, both Hillside and Bellwood moved for summary judgment. Each party attached briefs in support thereof. The court considered the motions and found that factual questions existed. Accordingly, both motions were denied and the matter was set for trial. Thereafter, the cause proceeded to trial and evidence was heard. On October 24, 1974, the court entered an order granting Hillside's motion for summary judgment. The court expressly found that no public highway or easement by prescription existed over the 51st Avenue crossing of the CA&E right-of-way. Bellwood filed its post-trial motion, and said motion was denied. Bellwood then moved that its appeal act as a supersedeas without bond. The court granted the motion, but conditioned its order upon the payment by Bellwood to Hillside of $300. The payment was to compensate Hillside for the cost of the erection and removal of a barricade it had placed across 51st Avenue immediately after the court's order became enforceable.

On appeal Bellwood contends that (1) the third-party complaint filed by defendant CA&E should be dismissed for failure to state a cause of action; (2) Hillside's complaint for injunction should be dismissed for failure to state a cause of action; (3) the trial court erred in entering summary judgment in favor of Hillside; (4) the entry of summary judgment is against the manifest weight of the evidence; (5) the trial court abused its discretion when it allowed the introduction of additional evidence after all parties had rested; and (6) the trial court abused its discretion in conditioning the stay order upon the payment of $300 by Bellwood to Hillside.

■■ We note that Bellwood raises the issue of the adequacy of the complaint and the third-party complaint for the first time on appeal. The

law is well settled that only where a complaint, with all the intendments in its favor, wholly and absolutely fails to state a cause of action at all, can an objection be made to it for the first time on appeal. *(Lasko v. Meier,* 394 Ill. 71, 67 N.E.2d 162.) Numerous cases hold that any lesser deficiency must be preserved by timely objection. *(E.g., Berry v. G. D. Searle & Co.,* 56 Ill. 2d 548, 309 N.E.2d 550; *Rosewood Corp. v. Fisher,* 46 Ill. 2d 249, 263 N.E.2d 833.) Upon careful review of the pleadings, we find that Bellwood's objections fall within the latter rule. Had Bellwood made timely motions to strike, both Hillside and the CA&E could have amended their respective complaints so as to alleviate the objections now raised on appeal. Bellwood has participated in a full trial on the merits, and it would be unfair to require the parties to relitigate the same issues. Accordingly, we hold that Bellwood has waived the right to challenge the sufficiency of the complaints. We hold further that the complaint and third-party complaint do not wholly and absolutely fail to state causes of action.

■■ Bellwood next contends that the trial court erred in entering summary judgment in favor of Hillside on the issue of whether a highway by prescription existed. As we stated, both Hillside and Bellwood filed motions for summary judgment. When the matter came up for hearing, the trial court determined that a factual question existed, and therefore denied the motions. Thereafter, the matter proceeded to trial and the court heard evidence. Bellwood argues that the court's subsequent entry of summary judgment in favor of Hillside clearly was error in view of the court's express recognition of a factual dispute. We find this argument to be purely technical and we cannot agree that the circumstances require a reversal. Clearly, the word "summary" is a misnomer, and the order should have read judgment in favor of Hillside and against Bellwood. Our preference for exactitude is not so great that we will disturb a judgment on the merits merely because it lacks the nicety of a proper label.

■■ We next consider Bellwood's contention that the judgment is against the manifest weight of the evidence. Bellwood strenuously urges that the evidence establishes a highway by prescription over the CA&E right-of-way. The law is settled that in order to establish a highway by prescription, the party pleading such must prove that the roadway has been used by the public in excess of the statutory period of 15 years (Ill. Rev. Stat. 1973, ch. 121, par. 2—202), and that said use has been continuous, uninterrupted, *adverse, under claim of right, and with the knowledge, but not the consent of the owner. Thorworth v. Scheets,* 269 Ill. 573, 110 N.E. 42.

■■ The evidence indicates that the public has used the 51st Avenue crossing as a roadway since at least as early as 1920. No one challenges that said use has been continuous and uninterrupted. Bellwood maintains

that under these circumstances, a presumption issues that the use has been adverse. Our attention is called to a long line of cases initiating with *Thorworth v. Scheets,* 269 Ill. 573, 110 N.E. 42, wherein the courts have held that the uninterrupted use of land for the requisite statutory period will raise the presumption that said use has been adverse and under claim of right; and that after same has been established, the burden shifts to the owner to prove that said use was under some license, indulgence or special contract inconsistent with a claim of right by the other party. (See also *Stevenson v. Meyer,* 10 Ill. 2d 335, 139 N.E.2d 740; *Verh v. Morris,* 410 Ill. 206, 101 N.E.2d 566; *Van Amburg v. Reynolds,* 372 Ill. 317, 23 N.E.2d 694.) Bellwood asserts that Hillside has not met this burden.

Hillside acknowledges the validity of the above presumption, but argues that it is inapplicable under the attendant circumstances. Our attention is brought to another series of Illinois cases holding that said presumption does not attach where the property is vacant and unoccupied. Rather, under such circumstances the use is presumed to be permissive and not adverse. *(E.g., Poulos v. F. H. Hill Co.,* 401 Ill. 204, 81 N.E.2d 854.) Hillside points out that the CA&E has discontinued the use of its right-of-way and that the property presently remains vacant and unused. Accordingly, Hillside argues that the public use of the 51st Avenue crossing is presumptively permissive. We must note, however, that the property did not become vacant and unoccupied until 1961 when the CA&E abandoned service on that line. Consequently, any presumption of permissive use can only arise as to the years following 1961. Therefore, as to the years preceding 1961, when the CA&E actively maintained its right-of-way, a rebuttable presumption issues that the public use of 51st Avenue was adverse. Accordingly, we must now determine whether Hillside has presented sufficient evidence to overcome this presumption.

As stated above, Bellwood contends that Hillside has not met this burden and that the court's finding to the contrary is against the manifest weight of the evidence. The record discloses that during the years 1901 and 1902 the CA&E constructed a railroad line on its right-of-way in the Village of Hillside. Since that time, the CA&E has retained ownership of the property and has paid all taxes on it. A crude gravel road presently crosses the railroad line at 51st Avenue. The record does not establish the exact date at which this road came into existence, although it is known that the public used it as early as 1920. Several witnesses testified that they never sought the CA&E's permission to use the crossing. They added, however, that they were never denied permission. Nor were they aware of any instance where the railroad prevented anyone from using the crossing.

The record further reveals that while its line was in operation, the

CA&E assumed sole responsibility for the maintenance of the crossing. Neither Bellwood nor Hillside ever asserted control over the crossing by attempting to improve its rough surface. We also note that the CA&E apparently maintained the crossing solely for the benefit and convenience of the public, since railroad personnel rarely, if ever, used the road. This conclusion is further supported by the fact that the railroad never barricaded the crossing nor took any measures to prevent its use by the public. On the contrary, the CA&E installed flashing lights and bells to facilitate its safe crossing. Moreover, a former CA&E employee testified that the railroad has granted easements over its property to other communities, but that no easement has been given over the instant crossing because neither Hillside nor Bellwood has requested one.

■■ Under the circumstances, we cannot agree with Bellwood that the record establishes a highway by prescription. The record demonstrates to our satisfaction that the CA&E always treated the property as its own, and that no municipality ever considered the 51st Avenue crossing to be a city street. It is axiomatic that a mere permissive use never ripens into a prescriptive use. (*Chicago, Burlington & Quincy R.R. Co. v. Ives*, 202 Ill. 69, 66 N.E.2d 940.) The evidence at bar amply supports the conclusion that the public use of the 51st Avenue crossing always was the tacit permission of the CA&E. Thus, said use was not adverse. Accordingly, we hold that the judgment of the trial court is not against the manifest weight of the evidence.

The cases upon which Bellwood relies are readily distinguishable. In *Thorworth v. Scheets*, 269 Ill. 573, the court found an easement by prescription over a private alley that had been used by the public for about 50 years. The evidence showed several instances where the city asserted control over the property. For example, when the owners of the property emptied their ashes and garbage into the alley, the city authorities had them removed. Moreover, on a number of occasions the city made necessary repairs on the alley. On one occasion the city even ordered the removal of a privately owned overhead bridge which interfered with the flow of traffic in the alley. There is no such evidence in the case at bar indicating that Bellwood ever asserted control over the railroad's property.

Bellwood places particular reliance on the factually similar case of *Boss v. Illinois Central R.R. Co.*, 210 Ill. App. 668. We have carefully reviewed that case and find it supports our conclusion here. In *Boss* the plaintiff brought an action for injuries sustained at a railroad crossing. Her ability to recover depended upon whether that crossing was a public street or merely private property. At trial the plaintiff presented evidence of a prescription easement which in many respects parallels the instant case. At the conclusion of the plaintiff's case, the trial court directed a verdict in

favor of the defendant railroad finding as a matter of law that the crossing was not a public street. The appellate court reversed and remanded stating that "[w]hatever the result may be upon a final hearing as to whether or not this was a public crossing, the evidence introduced, with its reasonable intendments certainly was sufficient to require the defendant to show that * * * this crossing * * * was * * * used under some license, indulgence or special contract inconsistent with the claim of right of the public." (210 Ill. App. 668, 675-76.) The court specifically stated:

> "The place at which the injury occurred was recognized by the city authorities, the public and, we think, by the defendant as one of the streets of the City of Effingham * * *." (210 Ill. App. 668, 672.)

Thus, the court recognized under even stronger facts that the question of whether a crossing is public or private is a question of fact, and that any presumption of adverse use may be overcome by evidence of permissive use.

■■ Bellwood further contends that the trial court abused its discretion in allowing a deed into evidence after all parties had rested and the case had been taken under advisement. The deed evidenced the conveyance to the CA&E of the right-of-way encompassing the 51st Avenue crossing. The record discloses that the evidence was closed on August 8, 1974. The following day counsel for the CA&E notified both Bellwood and Hillside by letter and telephone of its intention to deliver the deed to the trial court on August 13, 1974. A copy of the deed was enclosed with the letter. Although Bellwood was so notified, it made no objection at the time the deed was offered in evidence. Nor did it make any effort to rebut the contents of the document or offer further proof. The trial court may, in its discretion, re-open a case after the parties have rested. (*Country Life Insurance Co. v. Goffinet,* 117 Ill. App. 2d 338, 254 N.E.2d 281.) Under the circumstances we do not believe that said discretion has been abused.

■■ Lastly, Bellwood contends that the trial court abused its discretion in ordering Bellwood to pay the sum of $300 to Hillside as a condition of its stay order. The record reflects that after the entry of judgment and the denial of Bellwood's post-trial motions, Hillside immediately erected a barricade across the 51st Avenue crossing. Bellwood then moved for a stay order. The court entered the stay order with express condition that Bellwood pay the sum of $300 for the cost of the erection and removal of the barricade. Bellwood admits that pursuant to Supreme Court Rule 305 (Ill. Rev. Stat. 1973, ch. 110A, par. 305(b)) a stay order "shall be conditioned upon such terms as are just," and that the power of the trial court to impose conditions on bonds in cases of appeals by municipal

corporations is discretionary. However, Bellwood argues that the court abused its discretion since Hillside was put on notice that it intended to appeal and seek a supersedeas. Thus, Bellwood contends that cost of the erection and removal of the barricade should be borne by Hillside. While we do not favor Hillside's actions, we do believe it was within its rights. Accordingly, we can find no abuse of discretion here. Furthermore, we note that Bellwood made no objection to the order, and its failure to do so waived this issue on appeal.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON, P. J., and ADESKO, J., concur.