(No. 52620.—▮▮▮▮▮▮▮▮▮)

H. CECIL NEELY *et al.*, Appellees, v. LYNDELL COFFEY *et al.*, Appellants.

*Opinion filed September 15, 1980.*

Earl S. Hendricks, Jr., of Hendricks, Watt & Grace, Ltd., of Murphysboro, for appellants.

Edward L. Choate, of Carterville, for appellees.

MR. JUSTICE CLARK delivered the opinion of the court:

The plaintiffs, H. Cecil Neely, Lela Mae Neely, John T. Clark and Rebecca Clark, filed a complaint in equity in the circuit court of Williamson County. The prayer of the complaint requested the court to enjoin the defendants, Lyndell Coffey and Marie Lee Coffey, from obstructing a roadway leading to the plaintiffs' property and to declare that, alternatively, either a public easement by prescription, a private easement by prescription, or a private easement by implication had been created in the roadway. The defendants counterclaimed, seeking a mandatory injunction ordering plaintiffs John T. and Rebecca Clark to remove a sewer line which had been constructed partially by the city of Crainville and partially by the Clarks for use by the Clarks. Approximately 100 feet of the sewer line

ran underneath the surface of the roadway claimed to be owned by the defendants.

The trial court, after a hearing, concluded that the plaintiffs were entitled to a private easement by prescription and an implied easement on severance of the tenements. Furthermore, the court enjoined the defendants from interfering with the use of the roadway by the plaintiffs. Finally the court decided that the sewer line constituted a trespass on property owned by the defendants, but that damages, and not a mandatory injunction, were the proper remedy. The court ordered a hearing for the presentation of evidence on damages. The defendants declined to present any evidence on that issue. The court then awarded nominal damages of $10 to the defendants.

On appeal to the Appellate Court for the Fifth District, the court decided that the plaintiffs were entitled to use the roadway because they possessed a private easement by implication on severance of the tenements. The court further held that the sewer line did indeed constitute a trespass, but that, through the application of equitable principles, money damages would be awarded, not a mandatory injunction. The appellate court approved the trial court's award of $10 damages. (76 Ill. App. 3d 37.) We granted the defendants' petition for leave to appeal.

The factual setting of this litigation was ably and exhaustively set forth in the appellate court opinion. The only facts which need to be repeated follow. Troy Felts, the original grantor of all the property involved herein, built a north-south road in the 1920's in order to transport farm equipment into his fields. The roadway was 469 feet long and 12 feet wide. It was widened to 31 feet in 1931 when the New Block Coal Company obtained a leasehold interest from Felts. From 1936, when the coal company ceased operating, to 1977, when the action commenced, the roadway was available to be used by the general public and was used in various capacities. (See 76

Ill. App. 3d 37, 40-41.) In May 1977 plaintiffs John and Rebecca Clark purchased five acres from plaintiffs Cecil Neely and his wife. The Clarks' property is southeast of the roadway; the Neelys' land is located directly to the south. The only route of access to either the Clark or Neely property is by means of the roadway. In June and July of 1977 the Clarks obtained permission from the city of Crainville to have a sewer hookup with the Crainville sewer line. The line runs underneath 100 feet of the roadway and is several feet in depth. Troy Felts had never conveyed title to the roadway during his lifetime. Sometime in August 1977 and after construction of the sewer line was completed, Lyndell Coffey obtained quitclaim deeds from Felt's heirs conveying title to the roadway to Coffey. On September 16, Coffey then constructed a fence on the northern end of the roadway, thereby preventing the plaintiffs access to their property. Plaintiffs thereupon brought this action.

The issues presented concern the precise nature of the roadway easement and the appropriate remedy when a continuous trespass is committed beneath such an easement. Where a roadway has been shown to have been openly and notoriously used by the public in a free and unrestricted manner for 15 years or more, it will be considered a public highway. (*Stevenson v. Meyer* (1957), 10 Ill. 2d 335, 337-38; *Verh v. Morris* (1951), 410 Ill. 206, 211; *Mudge v. Wagoner* (1926), 320 Ill. 357, 362; Ill. Rev. Stat. 1977, ch. 121, par. 2–202.) Once such a public use has been shown, the burden is on the party who denies the existence of a public highway to show that the use was under some license or indulgence inconsistent with a claim of right by the public. (*Stevenson v. Meyer* (1957), 10 Ill. 2d 335, 338.) Considerable testimony was adduced at the hearing in this cause to the effect that the roadway was traveled from the 1920's onward by many persons and that they did so as a matter of public right. There was only

one instance where, on several weekend nights during the 1930's, the coal company closed the roadway off to the public in order to prevent the theft of gasoline it stored near the mine shaft. At all other times anyone could make use of the roadway. We think that, through the roadway's open and notorious use for over 15 years by members of the public, a public highway easement by prescription must be presumed (*Taylor v. Wentz* (1958), 15 Ill. 2d 83, 89; *Stevenson v. Meyer* (1957), 10 Ill. 2d 335, 338), and that the defendants have not in any way rebutted such a presumption. Accordingly, we hold that a public highway easement by prescription has been created and that any rights which the Coffeys acquired by means of the quitclaim deeds are subject to the highway easement. The Coffeys thus have no right to prevent the plaintiffs from using the roadway to gain access to their homes, nor may the Coffeys obstruct the public's use of the roadway. The issuance of an injunction to prevent such interference was proper.

With regard to the sewer line constructed by plaintiffs John and Rebecca Clark, since it exceeded the scope of the highway easement (*Dickman v. Madison County Light & Power Co.* (1922), 304 Ill. 470, 482; *Marlatt v. Peoria Water Works Co.* (1969), 114 Ill. App. 2d 11, 14), it clearly constituted a continuing trespass and an encroachment. (See *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 104.) In *Cammers* a mandatory injunction was sought to compel a cable television company to remove cable installed two to three feet underground along the entire length of the plaintiff's property which was adjacent to a public highway. It was stated there that while a mandatory injunction may issue to compel removal of private encroachments on another's land, even though the encroachment is slight, "a mandatory injunction is ordinarily inappropriate where the alleged encroachment lies within a highway right-of-way." (64 Ill. 2d 97, 102.) The appro-

priate remedy in this analogous context also is not a mandatory injunction, but substitutionary relief in the form of damages. This conclusion is supported by *Leitch v. Sanitary District* (1944), 386 Ill. 433, wherein a mandatory injunction was sought to compel the defendants to remove a sewer 13.69 feet below the surface of the west arm of the south branch of the Chicago river. This court stated:

> "It seems clear that to require the removal or lowering of the sewer by the Sanitary District, which, by the admission of appellants, leaves sufficient water depth for such boats as at the present time wish to use the west arm, or to require the city of Chicago to remove the water main, would result in no benefit to appellants, since the bridge spanning the river at Thirty-ninth street would still constitute a permanent obstruction to any and all water craft having a beam over 24 feet in width or a vertical height of 11.5 or greater. As herein pointed out, the city has no authority to remove or change the level of the bridge and neither the State nor its Department of Public Works and Buildings is a party here. It is a well-recognized rule that equity will not require the performance of a useless act. *** [E]quity will not do that which will be of no benefit to the party asking it, and which will work an injury to others. *** So, in this case, the result of a decree such as appellants seek would afford them no relief, while imposing substantial hardship on appellees." (386 Ill. 433, 440-41.)

(Accord, *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379.) Applying the same equitable principles to this case, the defendants are foreclosed from receiving a mandatory injunction. We especially are convinced that a mandatory injunction would be inequitable under these facts, since the defendants deliberately endeavored to obtain title to

the roadway *after* the sewer hookup had been installed. Plaintiff John Clark testified that, during construction of the sewer hookup, he told Lyndell Coffey of it, apologized for any inconvenience to Coffey, and offered to share the cost of repaving the entire roadway. Therefore, the defendants took title to the land with prior, actual knowledge of the encroachment. In addition, since the defendants declined to present evidence on the issue of damages, when presented with the opportunity to do so, the trial court's award of $10 nominal damages will be sustained.

Finally, although it may be true, as pointed out in the prescient dissent in *Cammers v. Marion Cablevision* (1976), 64 Ill. 2d 97, 107 (Ryan, J., dissenting), that the consent of highway authorities should be obtained under section 9—113 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 9—113) prior to construction of a sewer line, the legal effect of such failure is not in issue before this court. The plaintiffs did, however, obtain written permission and physical assistance from the city of Crainville when installing the sewer, thereby dispelling any notion that the plaintiffs acted with disregard for the public's rights in the roadway.

Accordingly, for the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*