Leon HENLEY, et al.,
Plaintiffs-Appellants,

v.

CONTINENTAL CABLEVISION OF ST. LOUIS COUNTY, INC.,
Defendant-Respondent.

No. 48990.

Missouri Court of Appeals,
Eastern District,
Division One.

June 11, 1985.

Stuart M. Haw, Norman Bierman, St. Louis, for plaintiffs-appellants.

Nathan B. Kaufman, Shelley Weinhaus, S. Sheldon Weinhaus, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Judge.

Plaintiffs, as trustees of University Park subdivision, appeal from an order dismissing their petition for failure to state a claim in an action against defendant Continental Cablevision of St. Louis County, Inc. We affirm.

The facts essential to a resolution of this matter are not in dispute.[1] Pursuant

---

1. Defendant has moved to strike from the legal file the indenture of University Park subdivision contending it was not timely presented nor properly identified in the trial court. Plaintiffs have moved to strike from the legal file the copies of the recorded easements of Southwest-

to an indenture recorded on April 8, 1922, plaintiffs' predecessors as trustees, were expressly granted the right to construct and maintain electric, telephone and telegraphic service on or over the rear five feet of all lots in the subdivision, and to grant easements to other parties for the purposes of creating and maintaining such systems. In July, 1922 and August, 1922, respectively, the trustees conveyed an easement to Southwestern Bell Telephone Company to "construct, reconstruct, repair, operate and maintain its lines for telephone and electric light purposes" and similarly to Union Electric to "keep, operate and maintain its lines consisting of cables, manholes, wires, fixtures and appurtenances thereto." Subsequently, in 1981 and 1982, defendant exercised licenses acquired from both utilities to enter upon these easements, and erected cables, wires and conduits for the purpose of transmitting television programs.

■ Plaintiffs filed an action for an injunction on December 29, 1983, seeking not only to enjoin a continuing trespass and compel the removal of defendant's wires and cables, but also seeking $300,000 in damages and the reasonable value of the use of plaintiffs' property for defendant's profit based upon quantum meruit. Defendants then filed a motion to dismiss for failure to state a cause of action, which was supported by both the affidavit of defendant's chief executive officer and copies of the easements granted by plaintiffs' predecessors to Southwestern Bell Telephone Company and Union Electric.[2] Said motion was sustained by the trial court on July 30, 1984 and this appeal ensued with

plaintiffs contending in effect that the easements granted the utilities were not apportionable and did not authorize the right to run television cables over the property in question.

■ Both parties agree that the subject easements are easements in gross, i.e. easements which belong to the owner independently of his ownership or possession of other land, and thus lacking a dominant tenement. *See Three-o-Three Investments, Inc. v. Moffitt,* 622 S.W.2d 736 (Mo.App. 1981); 3 Powell, the Law of Real Property; 34–22 (1984). The dispositive issue here is whether or not these easements are exclusive and therefore apportionable by the utilities to, in this case, defendant Continental Cablevision.

■ We believe the very nature of the 1922 easements obtained by both utilities indicates that they were intended to be exclusive and therefore apportionable. It is well settled that where the servient owner retains the privilege of sharing the benefit conferred by the easement, it is said to be "common" or non-exclusive and therefore not subject to apportionment by the easement owner. Conversely, if the rights granted are exclusive of the servient owners' participation therein, divided utilization of the rights granted are presumptively allowable. This principle stems from the concept that one who grants to another the right to use the grantor's land in a particular manner for a specified purpose but who retains no interest in exercising a similar right himself, sustains no loss if, within the specifications expressed in the grant, the use is shared by the grantee with others.

ern Bell Telephone Company and Union Electric Company on the grounds they were not authenticated in the trial court. No objection to any of these documents was made in the trial court nor was their consideration by the court complained of by pre or post-submission motion. Objections not presented to and decided by the trial court may not be considered by the appellate court for the first time on appeal. *Ohlendorf v. Feinstein,* 636 S.W.2d 687, 690 (Mo. App.1982). Both motions are therefore overruled.

2. Because the motion to dismiss was supported by matters outside the pleadings, it should have been treated as a motion for summary judgment. Rule 55.26(a). In view of the fact that plaintiff had ample opportunity from the date the motion was filed on March 5, 1984, until the date the motion was argued and submitted on May 24, 1984, and did file on the latter date a copy of the subdivision indenture, we find compliance with the intent of the rule and decline to remand this cause, sua sponte, for semantical corrections necessitated by the improper denomination of defendant's motion.

On the other hand, if the grantor intends to participate in the use or privilege granted, then his retained right may be diminished if the grantee shares his right with others. Thus, insofar as it relates to the apportionability of an easement in gross, the term "exclusive" refers to the exclusion of the owner and possessor of the servient tenement from participation in the rights granted, not to the number of different easements in and over the same land. Powell at 344–224–25.[3]

■ Here, there is no claim that plaintiffs' predecessors had at the time the easements were granted, any intention to seek authority for, or any interest whatsoever in using the five foot strips for the construction and maintenance of either an electric power system or telephone and telegraphic service. Moreover, at no time during the ensuing sixty-three years have the trustees been authorized to furnish such services by any certificate of convenience and necessity issued by the Public Service Commission pursuant to §§ 392.260 and 393.170, RSMo. 1978. Accordingly, the easements granted to Southwestern Bell and Union Electric were exclusive as to the grantors thereof and therefore apportionable.

■ Plaintiffs also argue defendant could acquire no rights from the utilities since their easements did not mention television cables, and that the cable attachments themselves constituted an extra burden on the property. We disagree. The owner of an easement may license or authorize third persons to use its right of way for purposes not inconsistent with the principal use granted. *Eureka Real Estate and Investment Company v. Southern Real E. and F. Company,* 355 Mo. 1199, 200 S.W.2d 328, 332 (1947). The 1922 easements granted to Union Electric expressly provided the right of ingress and egress by Union Electric, it successors and assigns, to "add to the number of and relocate all wires, cables, conduits, manholes, adding thereto from time-to-time...." Similarly, the easement conveyed to Southwestern

Bell expressly contemplated the construction and maintenance of "all poles, cables, wires, conduits, lateral pipes, anchor guys and all other fixtures and appurtenances deemed necessary at anytime by [Southwestern Bell], its successors and assigns...." It can hardly be said that the addition of a single coaxial cable to the existing poles for the purpose of transmitting television images and sound by electric impulse increases the burden on the servient tenement beyond the scope of the intended and authorized use.

Plaintiffs' reliance on *Consolidated Cable Utilities, Inc. v. City of Aurora,* 108 Ill.App.3d 1035, 64 Ill.Dec. 464, 439 N.E.2d 1272 (1982) is misplaced. Basing their decision upon the undisputed principle that the owner of property subject to an easement burden is entitled to prevent such burden from being increased, the Illinois court held that landowners were necessary parties to an action by a cable television company against certain utilities seeking a mandatory injunction authorizing the use of the utilities' easements. In 12 of the subdivisions involved, ordinances required underground installation of public utility equipment. In the absence of homeowner participation in the trial and evidence from them about the exact nature of the easements through their property, the cause was remanded for a more specific delineation of which easements the cable company did or did not have a right to use. *Id.* 64 Ill.Dec. at 469, 439 N.E.2d at 1277. Obviously, excavation upon a homeowner's property for the installation of underground cable poses a much greater burden than the attachment of an aerial cable to existing poles.

Although this is a case of first impression in Missouri, courts in other jurisdictions have addressed the legal effect of adding coaxial cables for television transmission to existing electric and telephone poles erected on easements without the consent of the owners of the fees. These courts have uniformly rejected arguments identical to those made by plaintiffs herein

---

**3.** A thorough explanation of the rule and its logical foundation is set forth in 5 Restatement of the Law, *Property,* section 493, Comments c and d.

and have reached a conclusion similar to ours.

In *Jolliff v. Hardin Cable Television Co.*, 26 Ohio St.2d 103, 269 N.E.2d 588 (1971), an easement granted to a power company for the transmission of electric power, including telegraph or telephone wires, was held to be an apportionable easement in gross by reason of the express language of the conveyance authorizing the grantee to lease some portion of its interest to third parties. In addressing the question of an additional burden on the servient tenements, the court noted that the attachment of a television coaxial cable to existing poles constituted no more of a burden than would installation of telephone wires, a burden clearly contemplated at the time of the grants. *Id.* 269 N.E.2d at 591.

In *Crowley v. New York Telephone Company*, 80 Misc.2d 570, 363 N.Y.S.2d 292 (1975) it was held that the failure to make specific mention of cable television in an 1949 easement to locate telephone poles and wires on plaintiff's property could not be so narrowly interpreted as to prohibit the addition of television cables to the telephone poles. "Just as we must accept scientific advances, we must translate the rights of parties to an agreement in the light of such developments." *Id.* 363 N.Y. S.2d at 294.

In *Hoffman v. Capitol Cablevision System, Inc.*, 52 A.D.2d 313, 383 N.Y.S.2d 674 (1976), the court concluded that the rights granted to two utilities were exclusive *vis a vis* the landowner, and were, therefore apportionable by the grantees. The addition of cable and equipment to already existing poles was held to constitute no additional burden since the defendant was doing only what the utilities were enabled to do. *Id.* 383 N.Y.S.2d at 677. The court noted the general rule that easements in gross for commercial purposes are particularly alienable and transferable. *See* 5 Restatement of the Law, *Property* § 489. For these reasons, the court held the failure to foresee and specifically refer to cable television in the grant was of no consequence. *Id.*

The reasoning of the *Hoffman* court has recently been found persuasive by the Cali-

fornia court in *Salvaty v. Falcon Cable Television*, 165 Cal.App.3d 798, 212 Cal. Rptr. 31 (1985). The court stated:

In the case at bench, the addition of cable television equipment on surplus space on the telephone pole was within the scope of the easement. Although the cable television industry did not exist at the time the easement was granted, it is part of the natural evolution of communications technology. Installation of the equipment was consistent with the primary goal of the easement, to provide for wire transmission of power and communication. We fail to see how the addition of cable equipment to a pre-existing utility pole materially increased the burden on appellant's property.

*Id.* 212 Cal.Rptr. at pages 34–35.

■ The unsurprising fact that the drafters of the 1922 easements did not envision cable television does not mandate the narrow interpretation of the purposes of the conveyance of rights and privileges urged by plaintiffs. The expressed intention of the predecessors of plaintiff trustees was to obtain for the homeowners in the subdivision the benefits of electric power and telephonic communications. Scientific and technological progress over the ensuing years have added an unforeseen dimension to such contemplated benefits, the transmission by electric impulse of visual and audio communication over coaxial cable. It is an inescapable conclusion that the intention of plaintiffs' predecessors was the acquisition and continued maintenance of available means of bringing electrical power and communication into the homes of the subdivision. Clearly, it is in the public interest to use the facilities already installed for the purpose of carrying out this intention to provide the most economically feasible and least environmentally damaging vehicle for installing cable systems.

Accordingly, the judgment of the trial court dismissing plaintiffs' petition for failure to state a claim is affirmed.

PUDLOWSKI, P.J., and KAROHL, J., concur.